Otis NICHOLSON, a/k/a William Nicholson, Plaintiff,

v.

AMALGAMATED LIFE INSURANCE COMPANY (The Amalgamated Cotton Garment Allied Industries Fund), Defendant.

Civ. A. No. E83–0186(L).

United States District Court, S.D. Mississippi, E.D.

July 15, 1985.

Louie M. Bishop, Bishop & Howard, Waynesboro, Miss., for plaintiff.

John L. Maxey, Cupit & Maxey, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

This cause is before the court on the motion of the defendant, Amalgamated Life Insurance Company (Amalgamated), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. After consideration of the briefs with attachments submitted by the parties, the court is of the opinion that the defendant's motion for summary judgment should be granted.

Nicholson was hospitalized in December 1982 and incurred medical expenses in the amount of $498.90. Amalgamated was first notified of plaintiff's claim on April 27, 1983 when it received a copy of Nicholson's hospital bill. Since Blue Cross of Pennsylvania had paid $400.90 of the bill, Amalgamated directed its payor, Blue Cross of Philadelphia, to pay the remaining $98.00 which the defendant claims it understood to be due to Nicholson under its coordination of benefits provision. This provision states that, where an insured is covered under the Amalgamated Garment and Allied Industries Fund, which is insured by Amalgamated Life Insurance Company, and also by other group coverage, the benefits under the Fund's group coverage and the benefits provided to the insured under his other group coverage are to be coordinated so that the insured receives no more money in insurance benefits than the actual amount of his incurred expenses. The defendant alleges that it discovered that Blue Cross of Pennsylvania insured Nicholson under individual coverage rather than group coverage[1] after the plaintiff had obtained legal counsel. Therefore, Amalgamated directed Blue Cross of Philadelphia to pay him the remaining $400.90 due Nicholson under his group coverage insurance policy.

Nicholson was a member of the Amalgamated Clothing and Textile Workers Union and obtained his insurance coverage with Amalgamated Life Insurance Company as a benefit of that membership. James E. Jackson, International Vice President of the union, has, by affidavit, stated that Nicholson never filed a grievance under the collective bargaining agreement or supplemental agreement as to any complaint with regard to the payment or handling of his insurance claim. The plaintiff charges that the defendant willfully and deliberately failed to pay the amount owed under his group insurance policy in bad faith and seeks both actual and punitive damages.

█ The court is of the opinion that the plaintiff's state based tort action for bad faith delay in making payment under the collective bargaining agreement is preempted by § 301 of the Labor Management Relations Act of 1947 (LMRA), 61 Stat. 156, 29 U.S.C. § 185, according to the recent U.S. Supreme Court decision in *Allis-Chalmers Corp. v. Lueck*, —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In *Lueck*, the plaintiff was a mem-

---

1. According to the defendant, Nicholson failed to attach a claim form or a statement concerning his individual insurance coverage, causing the defendant to assume mistakenly that Blue Cross of Pennsylvania had paid under group coverage.

ber of the United Automobile, Aerospace and Agricultural Implement Workers of America and was employed by Allis-Chalmers Corporation (Allis-Chalmers). Lueck's union and employer were both parties to a collective bargaining agreement funded by Allis-Chalmers and administered by Aetna Life & Casualty Company (Aetna). After suffering a back injury, Lueck filed a disability claim with Aetna and subsequently began receiving disability benefits effective from the date of filing. Lueck later complained, however, that his employer would periodically order Aetna to terminate payments either because he failed to appear for a doctor's appointment, required hospitalization for reasons unrelated to his back injury or for no reason at all. Lueck also complained of harassment by Allis-Chalmers in that he was repeatedly asked by his employer to submit to reexamination by different doctors. Instead of attempting to resolve his dispute by utilizing the grievance procedure, Lueck filed suit against Allis-Chalmers and Aetna in state court alleging that they had intentionally failed to make disability payments without a reasonable basis for withholding the payments. Subsequent to the filing of his suit, Lueck's claims were all eventually paid.

On cross-motions for summary judgment, the state trial court ruled in favor of Allis-Chalmers and Aetna, holding that Lueck had stated a claim under § 301 of the LMRA but that, if his claim were "deemed to arise under state law instead of Section 301", then the state law claim was preempted by federal law. On appeal, the Wisconsin Court of Appeals affirmed but the Supreme Court of Wisconsin reversed, reasoning that a § 301 suit arises from a violation of a labor contract, whereas Lueck's claim was in tort for bad faith and that, under Wisconsin law, the latter was distinguishable from a bad faith breach of contract claim. —— U.S. at ——, 105 S.Ct. at 1908. The Wisconsin Supreme Court further determined that the bad faith claim was not preempted by federal law, conclud-

ing that the administration of claim procedures under a collective bargaining agreement was not of central concern to federal labor law or a mainstay of labor relations. On writ of certiorari, the U.S. Supreme Court reversed, holding that "when resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law." —— U.S. at ——, 105 S.Ct. at 1916.

Nicholson, however, alleges that the facts in the instant case and those in *Allis-Chalmers Corp. v. Lueck* are distinguishable in that the defendant's refusal to pay was not the result of any interpretation of the collective bargaining agreement but was simply a failure to pay in bad faith. A similar argument was advanced by Lueck before the Wisconsin Supreme Court and the U.S. Supreme Court. Justice Blackmun, writing for the majority, stated:

The Wisconsin court attempted to demonstrate by a proffered example, the way in which a bad-faith tort claim could be unrelated to any contract claim. It noted that an insurer ultimately could pay a claim as required under contract, but still cause injury through "unreasonably delaying payments" of the claim.... In such a situation, the courts reasoned, the state tort claim would be adjudicated without reaching questions of contract interpretation. *Ibid.* The court evidently assumed that the only obligations the parties assumed by contract are those expressly recited in the agreement, in this case the right to receive benefit payments for non-occupational injuries. Thus, the court reasoned, the good-faith behavior mandated in the labor agreement was independent of the good-faith behavior required by state insurance law because "[g]ood faith in the labor agreement context means [only] that parties must abide by the specific terms of the labor agreement."

If this is all there is to the independence of the state tort action, that independence does not suffice to void the pre-emptive effect of § 301. The assumption that the labor contract creates no implied rights is not one that state law may make. Rather, it is a question of federal contract interpretation whether there was an obligation under this labor contract to provide the payments in a timely manner, and, if so, whether Allis-Chalmers' conduct breached that implied contract provision. .

The Wisconsin court's assumption that the parties contracted only for the payment of insurance benefits, and that questions about the manner in which the payments were made are outside the contract is, moreover, highly suspect. There is no reason to assume that the labor contract as interpreted by the arbitrator would not provide such relief.

— U.S. at ——, 105 S.Ct. at 1913. In this case, as in the Supreme Court case, the plaintiff was eventually paid the total amount due under his insurance policies. The basic claim before this court, and the claim that was advanced in Lueck, is that the plaintiff was not timely paid, that he had to obtain an attorney before the defendants paid the claim and that the plaintiff incurred expenses and emotional distress as the result of the delayed payments. As the Supreme Court stated, the existence of an implied obligation under a collective bargaining agreement to pay in a timely manner is a question of federal contract interpretation. As such, Nicholson's claim is preempted by § 301 of the LMRA; otherwise, as the Supreme Court held, Congress' goal of a unified federal body of labor-contract law would be subverted. — U.S. at ——, 105 S.Ct. at 1914–16.

 The plaintiff alternately argues that, if his claim is under § 301, he should be allowed to proceed in the absence of compliance with the grievance requirements because the actions of the defendant's officials demonstrated that the filing of a formal grievance would have been futile. In support of his contention, Nicholson states that the defendant, through the plant insurance representative, the joint board of the union in Hattiesburg, Mississippi and the company representative in New York, all informed Nicholson that the defendant would not pay the claim. Ordinarily, an employee claiming violation of a collective bargaining agreement by his employer must first exhaust his remedies provided in the agreement. *Rabalais v. Dresser Industries, Inc.*, 566 F.2d 518, 519 (5th Cir.1978). No exhaustion is necessary, however, if (1) the union wrongfully refuses to process the employee's grievance in violation of its duty of fair representation; (2) the employer's conduct amounts to a repudiation of the remedial procedures stated in the contract; or (3) the exhaustion of remedies would be futile. *Id.* The court concludes, however, that since the plaintiff did not allege a claim under § 301 in his complaint, much less a charge of futility, to allow the plaintiff to proceed on this basis would be prejudicial to the defendant by not providing it with fair notice of the claim under F.R.C.P. 8(a)(2). *See Rabalais v. Dresser Industries, Inc.*, 566 F.2d at 519 (futility exception does not apply since plaintiff did not allege futility in complaint).

Accordingly, it is the court's opinion that the defendant's motion for summary judgment on the claim that the state law claim is preempted by § 301 should be granted. A separate judgment shall be submitted in accordance with the local rules.